UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| DOMINIQUE NAYLON, et al., ) | |
| ) | |
| Plaintiffs, ) | 3:08-cv-00625-LRH-RAM |
| ) | |
| v. ) | |
| ) | ORDER |
| JOHN WITTRIG, et al., ) | |
| ) | |
| Defendants. ) | |

Before the court is the Individual Defendants'[1] Motion for Summary Judgment Regarding Plaintiffs' Claim for Declaratory Relief (#84[2]), in which Defendant Geothermal Rail Industrial Development, LLC ("Geothermal Rail") joined (#87). Plaintiffs filed an opposition (#103), and the Individual Defendants filed a reply (#105), in which Geothermal Rail joined (#106).

Also before the court is Plaintiffs' motion to stay briefing and consideration of the motion for summary judgment (#85). The Individual Defendants filed an opposition (#88), in which Geothermal Rail joined (#95), Plaintiffs filed a reply (#98), and the Individual Defendants

---

[1] The "Individual Defendants" are, either individually or as trustees of certain trusts, Herbert and Edeltraut Ruppel, Jean P. Irissarry, Jurgeon Schlicker, Justo and Maria Jaimerena, Joseph Louden, Jewel E. Lewis, Roy and Ernestine West, Renee Ruppel, Orville and Dorothy Ridenour, Curtis and Lisa Anne Smith, John W. and Sylvia J. McGee, Jason and Tristi Boldt, Peggy L. Parker, and Willie and Marianne Ruppel. *See* Doc. #84, p. 2.

[2] Refers to court's docket entry number.

requested oral argument (#101).

## I.     Facts and Procedural History

This case involves a dispute between two groups of creditors over priority under a deed of trust. More specifically, they dispute whether a future advances clause or "dragnet clause" in a deed of trust executed to secure a loan by a first group of creditors (including Plaintiffs) permitted a second group of creditors (the Individual Defendants) to have their loan secured by the same deed of trust, thereby granting the second group equal priority with the first.

Plaintiffs are Dominique Naylon, an individual, and Daniel B. O'Dell and Linda D. Hess, as Trustees of the O'Dell Family Trust dated May 15, 1999. In the summer of 2005, mortgage broker John Wittrig solicited and offered to Plaintiffs and others the opportunity to make an investment loan to develop a 412.5 acre parcel of real property in Nevada owned by Geothermal Rail (the "Geothermal Property"). The loan was to be for $450,000 and secured by a deed of trust. Naylon invested $130,000 and Hess and O'Dell invested $179,000, giving Plaintiffs a combined 68.7 percent share of the loan. On July 29, 2005, Geothermal Rail executed a Promissory Note Secured by Deed of Trust (the "First Note") in the principal sum of $450,000 in favor of Plaintiffs and the other initial investors. The same day, a Short Form Deed of Trust and Assignment of Rents (the "First Deed of Trust") was recorded against the Geothermal Property to secure the note. The First Deed of Trust names Geothermal Rail as Trustor and Plaintiffs and the other initial investors as Beneficiary, and it contains the following provision:

> For the purpose of securing (1) payment of the sum of $ 450.000.00 with interest thereon according to the terms of a promissory note or notes of even date herewith made by Trustor, payable to order of Beneficiary, and all extensions or renewals thereof; and (2) the performance of each agreement of Trustor incorporated herein by references or contained herein; (3) payment of additional sums and interest thereon which may hereafter be loaned to Trustor, or to his successors or assigns, when evidence [sic] by a promissory note or notes reciting that they are secured by this Deed of Trust.

The third numbered clause is commonly known as a future advances or "dragnet" clause.

Nearly a year later, in May 2006, Wittrig began soliciting other investors to make an additional loan on the Geothermal Property. On May 26, 2006, Geothermal Rail executed a Promissory Note Secured by Deed of Trust (the "Second Note") in the principal sum of $700,000, this time in favor of the Individual Defendants. A second deed of trust was not recorded. Instead, in June 2006, an Additional Advance to Deed of Trust and Assignment of Rents (the "Additional Advance") was recorded to secure the Second Note as a future advance under the First Deed of Trust and to add the Individual Defendants as beneficiaries.[3] Additionally, on September 18, 2008, a Modification Agreement of Promissory Note was recorded to extend the due date on the First and Second Notes to March 1, 2010.

On November 26, 2008, Plaintiffs filed this action. Doc. #1. It was allegedly brought about by Plaintiffs' attempt in September 2008 to issue a notice of default on the First Note and by Wittrig's response that their notice was invalid because they no longer held a majority share due to the consolidation of the two loans. Most of Plaintiffs' claims are levied against Wittrig and others for alleged fraud, breach of fiduciary duties, securities violations, and other claims. As against the Individual Defendants and Geothermal Rail, Plaintiffs assert only claims for declaratory and injunctive relief pertaining to whether Plaintiffs, as holders of the First Note and as beneficiaries under the First Deed of Trust as originally recorded, have priority over the Individual Investors, as holders of the Second Note.

On October 12, 2010, the Individual Defendants, with Geothermal Rail joining, moved for summary judgment on Plaintiffs' claim for declaratory relief. Doc. #84. They contend that under

---

[3] According to the Individual Defendants, the Additional Advance was recorded twice. It was originally recorded on June 21, 2006, with the Individual Defendants listed as beneficiaries, and re-recorded on June 24, 2006, to correct the beneficiary list by including the Plaintiffs and the other initial investors as existing beneficiaries and designating the Individual Defendants as new beneficiaries. Doc. #84, p. 9. The court is unable to confirm these details, however, as only the first recording is in the record. *See* Doc. #103, Exh. D. While the Individual Defendants purport to rely on an exhibit attached to Plaintiffs' Complaint "on file herein," no exhibits are attached to the copy on file in the court's electronic docketing system. *See* Doc. #1.

the terms of the dragnet clause in the First Deed of Trust, the original beneficiaries' consent was not required for the instrument to secure the Second Note as a future advance, and that the original beneficiaries consented in any event.  Plaintiffs responded on October 29, 2010, by moving to stay briefing and consideration of the motion for summary judgment on the ground that the bankruptcy filing of Wittrig and application of the automatic stay prevented Plaintiffs from completing necessary discovery.  Doc. #85.  The Individual Defendants opposed a stay, arguing that the automatic stay was inapplicable as to non-debtor co-defendants, Doc. #88, and they requested oral argument.  Doc. #101.  In the absence of any court action on the motion for stay, and following the withdrawal of their legal counsel, Plaintiffs filed a substantive opposition to the motion for summary judgment on December 22, 2010.[4]  Doc. #103.  Plaintiffs contend that their consent was required to secure the Second Note as a future advance under the First Deed of Trust, and their consent was not given.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, answers to interrogatories, and other materials in the record show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the initial burden of informing the court of the basis for its motion,

---

[4]The court denies the defendants' request to disregard Plaintiffs' substantive opposition as untimely.  *See* Doc. #105, p. 6.  Plaintiffs' timely motion to stay briefing and consideration of the motion for summary judgment is construed as a motion to extend the briefing schedule, and the extension will be granted *nunc pro tunc*.

4

along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the party's position is insufficient to establish a genuine dispute; there must be evidence on which a jury could reasonably find for the party. *See id.* at 252.

**III.   Discussion**

A future advances or "dragnet" clause in a deed of trust "has the effect of making the security instrument security for the debtor's past, present and future obligations to a particular creditor." *Union Bank v. Wendland*, 126 Cal. Rptr. 549, 553 (Cal. Ct. App. 1976). The purpose is thus to reserve to the beneficiary a priority position in the collateral as to future advances that would otherwise be subordinate to intervening incumbrances by third parties. In Nevada, dragnet clauses in security instruments are generally valid and enforceable under both statutory and common law, subject to various limitations. *See* Nev. Rev. Stat. § 106.360; *In re Resort at Summerlin Litig.*, 127 P.3d 1076, 1080 (Nev. 2006) (applying the common law where the parties have not opted-in to the statutory scheme); *Chartz v. Cardelli*, 279 P. 761, 763 (Nev. 1929) ("a

mortgage made in good faith, for the purpose of securing future debts, is valid," but optional future advances "made after notice of a subsequent incumbrance are not superior").

But this is not the ordinary case where the original creditor and named beneficiary under a deed of trust has made a future advance and is invoking a dragnet clause to claim priority over an intervening third-party incumbrance. This case presents the opposite scenario: The third-party creditor is seeking to use the dragnet clause to his *own* benefit, and to the detriment of the original creditor, by having the third-party loan treated as a future advance under the original creditor's deed of trust. Plaintiffs and the other initial investors, as holders of the First Note and the only named beneficiaries under the First Deed of Trust, have made no additional advances to the trustor, Geothermal Rail. Instead, the purported "future advance" sought to be tacked on to the First Deed of Trust is the Second Note held by the Individual Investors, who are not parties to the First Deed of Trust as originally recorded. The question presented is thus whether a dragnet clause in a deed of trust executed to secure a debt to certain named beneficiaries extends to future advances made by unaffiliated third parties, thereby allowing the third-party creditors to avoid subordination and claim equal priority as co-beneficiaries under the deed of trust.

The Individual Defendants assert that "dragnet clauses have long been held valid, not only as between the immediate parties to the instrument, but also as against third parties." Doc. #84, p. 12. The rule as stated is supported by the cases cited. *See Union Bank*, 126 Cal. Rptr. at 553; *Tapia v. Demartini*, 19 P. 641, 643 (Cal. 1888) ("It is firmly settled by a long line of decisions that a mortgage made in good faith to cover future advancements or indorsements is valid, not only as between the immediate parties to the instrument, but as against subsequent purchasers or incumbrancers, if properly recorded."); *Griffith v. State Mutual Bldg. & Loan Ass'n*, 51 P.2d 246 (Ariz. 1935) ("It is the unquestioned rule that a mortgage may be given to secure not only money loaned at the time of the mortgage, but also any amount which is to be advanced in the future, and that such a provision is good as against all subsequent incumbrancers and purchasers having notice of the mortgage . . . ."). But it undermines the Individual Defendants' position in this case. To

enforce a dragnet clause *against* subsequent third-party incumbrancers is to have the third-party claims subordinated to the original beneficiary's priority position as to future advances. But here, the Individual Defendants *are* the subsequent third-party incumbrancers. And in direct contravention of the stated rule, they are seeking to enforce the dragnet clause in the First Deed of Trust in their own favor, and against the interests of the original beneficiaries, by having the Second Note secured by the same instrument and having themselves added as co-beneficiaries.

The court therefore rejects the Individual Defendants' argument that "there is **no** requirement that a [third-party] lender obtain the beneficiaries' consent in order to advance future sums under a dragnet clause in a deed of trust." Doc. #84, p. 13. What is proposed is that the Individual Defendants, as subsequent third-party incumbrancers, can claim the full benefit of the First Deed of Trust, based only on the consent of Geothermal Rail as trustor and without the consent of Plaintiffs and the other initial investors as the sole named beneficiaries. But such a result is contrary to the very purpose of a deed of trust and dragnet clause as mechanisms to ensure the named beneficiaries' priority position in the collateral over subsequent third-party creditors. To accept such a proposition in this case "would be to countenance a situation inviting abuse and unfair dealing" by giving the trustor "in effect a power of attorney" to dilute the beneficiaries' security interest and negate their priority position by using the same deed of trust as security for later-incurred debts to unaffiliated third parties. *Gates v. Crocker-Anglo Nat'l Bank*, 65 Cal. Rptr. 536, 538 (Cal. Ct. App. 1968) (quoting *First v. Byrne*, 28 N.W.2d 509, 513 (Iowa 1947)). "Such a result should not be presumed or declared, except upon a clear showing of intention." *Id.*

The proposition is also contrary to well-established contract law governing intended third-party beneficiaries. A third party may obtain the benefit of another's contract only if there is a clearly manifested intent to secure the benefit claimed for the third party. *Lipshie v. Tracy Inv. Co.*, 566 P.2d 819, 825 (Nev. 1977). Here, the First Deed of Trust manifests no such intent. It is a contract only between Geothermal Rail as the "Trustor" and Plaintiffs and the other initial investors as "Beneficiary," and it makes no mention of debts to third parties or adding beneficiaries.

7

The Individual Investors assert that the dragnet clause lists only two conditions and that both are satisfied here: (1) "additional sums" were "hereafter . . . loaned to Trustor," and (2) that loan was "evidence[d] by a promissory note [the Second Note] . . . reciting that [it was] secured by this Deed of Trust."  However, it is meritless to suggest that the dragnet clause clearly manifests an intent to cover loans from subsequent third-party incumbrancers merely because it does not more explicitly identify the source of the "additional sums . . . loaned to Trustor."  Not only does the dragnet clause make no mention of third-party loans, such a reading is inconsistent with both the context in which the clause appears and the purpose of the clause and deed of trust.  The dragnet clause is the third subpart of a three-part security clause that pertains only to the "Trustor" and "Beneficiary" and is intended to secure the named Beneficiaries' priority position against subsequent third-party incumbrancers as to both the $450,000 First Note and future advances.

For all these reasons, the court rejects as meritless the Individual Defendants' argument that Geothermal Rail's consent as trustor was sufficient, and Plaintiffs' consent as named beneficiaries was not required, to secure the Second Note as a future advance under the First Deed of Trust.

That is not to say, however, that the parties to the First Deed of Trust—Geothermal Rail, Plaintiffs, and the other initial investors— could not have agreed to its amendment in order to secure the Second Note and add the Individual Investors as co-beneficiaries.  The California Supreme Court held in *Tapia* that a mortgage validly secured future advances made by a designated third party (Mooney), where the mortgage was specifically executed "with the understanding and agreement among all the parties thereto," including the third party, that it would secure the third-party advances.  19 P. at 642.

Nonetheless, the court finds that genuine issues of material fact exist as to whether Plaintiffs agreed to so amend the First Deed of Trust.  The Individual Defendants have presented evidence that Plaintiffs were sent a package of documents pertaining to the second loan and that they signed or initialed each document.  However, the purpose, timing, and validity of those signatures is disputed and far from clear.  The documents do not appear to include Plaintiffs as

parties to the documents or require their signatures, their signatures or initials appear only in the corners of the documents, and the documents had already been executed and notarized before Plaintiffs received them. O'Dell accordingly testified that he was only acknowledging receipt of the documents and the recording of subordinate debt, not granting his consent to amendment of the First Deed of Trust. And Naylon testified that her signature was forged prior to the Additional Advance being recorded. While there is evidence that Naylon personally signed the documents in Wittrig's presence on July 5, 2006, by that time the Additional Advance had already been recorded in June. Given the disputed facts and uncertainty surrounding the execution and recording of the Additional Advance and related documents, as well the incompleteness of the record,[5] summary judgment is not appropriate.

### IV. Plaintiffs' Motion to Stay

As their first response to the Individual Defendants' motion for summary judgment, Plaintiffs moved to stay briefing and consideration of the motion on the ground that the bankruptcy filing of Wittrig and application of the automatic stay prevented Plaintiffs from completing necessary discovery. Doc. #85. Due to the court's delay in ruling on the motion to stay and the instant merit-based denial of the motion for summary judgment, Plaintiffs' motion is now moot to the extent it seeks a stay of briefing and consideration of the summary judgment motion.

Unresolved, however, is Plaintiffs' request for leave to complete necessary discovery. *See* Doc. #85, p. 10. The court makes no determination as to whether the automatic stay resulting from Wittrig's bankruptcy filing did or did not prevent Plaintiffs from conducting discovery as to the non-debtor defendants in this action. Good cause appearing and in the interests of justice, the court will construe Plaintiffs' motion as a motion to reopen discovery and will grant the request.

---

[5]Both parties cite at various times to exhibits attached to Plaintiffs' Complaint, such as the Additional Advance and other documents at the heart of this litigation. *E.g.*, *supra* note 3. Due to an apparent oversight, however, no exhibits are attached to the Complaint on file in the court's electronic docket. *See* Doc. #1.

9

1  IT IS THEREFORE ORDERED that the Individual Defendants' Motion for Summary Judgment Regarding Plaintiffs' Claim for Declaratory Relief (#84) is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Stay Motion for Summary Judgment Regarding Plaintiffs' Claim for Declaratory Relief (#85) is GRANTED in part and DENIED in part. To the extent Plaintiffs seek a stay of briefing and consideration of the Individual Defendants' motion for summary judgment, the motion is DENIED as moot. Construed as a request for extension of time to file a response to the motion for summary judgment, the motion is GRANTED nunc pro tunc. Construed as a request to reopen discovery, the motion is GRANTED and the matter is REFERRED to the Magistrate Judge for scheduling.

IT IS FURTHER ORDERED that the Individual Defendants' Request for Oral Argument on Plaintiffs' Motion to Stay Motion for Summary Judgment (#101) is DENIED.

IT IS SO ORDERED.

DATED this 10th day of August, 2011.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE