UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \* \* \*

| | |
|---|---|
| DOMINIQUE NAYLON, et al., | |
| Plaintiffs, | 3:08-cv-00625-LRH-WGC |
| v. | ORDER |
| JOHN WITTRIG, et al., | |
| Defendants. | |

Before the court is Plaintiffs' motion for reconsideration to clarify and enforce settlement agreement (ECF No. 150). Defendants have filed three separate responses (ECF Nos. 155–57), to which Plaintiffs replied. ECF No. 160. Because Plaintiffs' requested relief stems from multiple conflicting interpretations of the settlement agreement at issue rather than its repudiation or complete frustration, this case does not present the "extraordinary circumstances" required to grant relief from the final order dismissing the case. And because there is no basis for this court's continued jurisdiction over the settlement agreement, Plaintiffs' only recourse is to file a new action. The court will therefore deny Plaintiffs' motion.

I.  **Background**

A.  **The original dispute**

The instant motion relates to a case formerly before this court that settled in 2013. The case stems from a dispute between two groups of investors over priority under a deed of trust that secured their respective promissory notes. The plaintiffs in this case are some of the investors in the first promissory note: Dominique Naylon, an individual, and Daniel B. O'Dell and Linda D. Hess, as Trustees of the O'Dell Family Trust dated May 15, 1999. In the summer of 2005, Defendant John Wittrig, a mortgage broker, solicited Plaintiffs and other investors with

the opportunity to make an investment loan to develop a 412.5 acre parcel of real property located in Lyon County, Nevada, and owned by Defendant Geothermal Rail Industrial Development, LLC ("GRID").

On July 29, 2005, GRID executed a promissory note secured by deed of trust ("the First Note") in the principal sum of $450,000 in favor of Plaintiffs and other non-party initial investors. The same day, a short form deed of trust and assignment of rents was recorded against the GRID property to secure the note. The terms of the First Note called for GRID to make monthly repayments of the loan with interest and complete repayment of the remaining balance on September 1, 2007 (i.e., the maturity date). It appears that in 2006, Plaintiffs and GRID agreed to modify this maturity date to September 1, 2008.[1] ECF No. 156 at 12.

Nearly a year after the First Note's formation, Wittrig began soliciting other investors to make an additional loan on the GRID property. On May 26, 2006, GRID executed a promissory note ("the Second Note") in the principal sum of $700,000 in favor of a second group of investors ("Individual Defendants").[2] Like the earlier note, the Second Note called for GRID's monthly repayments, with the complete remaining balance being due on September 1, 2008. A second deed of trust was not recorded. Instead, in June 2006, an additional advance to deed of trust and assignment of rents was recorded to secure the Second Note as a future advance under the first deed of trust and to add the Individual Defendants as beneficiaries.

The dispute between the two groups of investors (i.e., Plaintiffs and Individual Defendants) began in August 2008, when Individual Defendants and GRID executed a modification of both notes, extending the due dates of both loans until March 10, 2010. ECF No. 150 at 6; ECF No. 156 at 12. Plaintiffs have asserted that they never agreed to this modification and have continuously referred to the decision as "unilateral." ECF No. 150 at 6. Conversely,

---

[1] Plaintiffs do not address this fact, but it does not appear to be in dispute and comports with the surrounding facts.

[2] "Individual Defendants" are, either individually or as trustees of certain trusts, Herbert and Edeltraut Ruppell, Jean P. Irissarry, Jurgeon Schlicker, Justo and Maria Jimerena, Joseph Louden, Jewel E. Lewis, Roy and Ernestine West, Renee Ruppel, Orville and Dorothy Ridenour, Curtis and Lisa Anne Smith, John W. and Sylvia J. McGee, Jason and Tristi Boldt, Peggy L. Parker, and Willie and Marianne Ruppel.

2

Defendants have maintained that more than a majority of the investors supported this decision, and thus, pursuant to Nevada's 51% rule,[3] Individual Defendants were entitled to modify the loan's terms, including its maturity date. *See, e.g.*, ECF No. 155 at 5; ECF No. 156 at 12. This argument stems from the disputed premise that, because the Second Note was formed as a future advance under the first deed of trust that secured the First Note, the two notes merged into a single loan. *See* ECF No. 107 at 3; ECF No. 150-14 at 3. Under this argument, Individual Defendants would be the majority beneficial-interest holders for the combined $1,150,000 loan and Plaintiffs would therefore no longer have management control of their individual loan. *See, e.g.*, ECF No. 150-7 at 10.

The following month, Plaintiffs served GRID, the issuer of both notes, with a notice of default for failing to repay the First Note's remaining balance by the 2008 maturity date—thereby refusing to recognize the modified 2010 maturity date. However, Defendant Wittrig informed Plaintiffs that they were no longer majority interest holders of the purportedly combined loan and thus, under the 51% rule, could not declare a default. ECF No. 150-7 at 10.

Plaintiffs subsequently filed suit against Individual Defendants, GRID, and Wittrig (collectively "Defendants") in this court in November 2008. One of the primary issues in the suit was whether the Second Note's formation not only combined both loans but also granted both groups of investors equal priority under the deed of trust, a position that Defendants had asserted. ECF No. 150-7 at 10–11; *see also* ECF No. 107. After the court denied Defendants summary judgment on this precise issue (ECF No. 107), the parties entered settlement negotiations.

---

[3] "The 51% Rule recognizes that 51% or more of the fractional beneficial interest holders in a loan are entitled to exercise management control over that loan, including designating their loan servicer and deciding whether to foreclose on a loan, to sell foreclosure property, and to agree with borrowers to modify the terms of the loan documents." *In re USA Commercial Mortg. Co.*, 802 F. Supp. 2d 1147, 1159 (D. Nev. 2011) (citing Nev. Rev. Stat. § 645B.340(1)).

### B. The settlement agreement

Magistrate Judge William G. Cobb held a settlement conference with the parties on July 16, 2012, at which point the parties agreed to settle the case.[4] ECF No. 134. After the parties placed the settlement agreement's terms on the record, Judge Cobb informed the parties that he would retain jurisdiction only for the limited purpose of resolving any disputes while the parties reduced these terms to writing. ECF No. 159 at 34. He further clarified that the court would not retain jurisdiction to enforce the settlement agreement after its execution. *Id.* No disputes over the settlement agreement's terms were raised at the time, and the parties, pursuant to the agreement, filed a stipulation dismissing Plaintiffs' claims with prejudice (ECF Nos. 138, 147), which the court granted (ECF Nos. 139, 148).

Under the agreement, Plaintiffs conceded that both groups of investors are entitled to equal priority under the deed of trust (ECF No. 150-10 at 7), a position that, even in light of the instant motion, remains undisputed. Additionally, Plaintiffs consented to a loan modification that Individual Defendants and GRID had agreed to several weeks before the settlement agreement's execution, which extended the loan's maturity date until December 31, 2013. ECF No. 150-10 at 6, 17–22. The parties also agreed that, "[i]n the event of default under the [First Note], as modified, [Plaintiffs] and [Individual Defendants] will be entitled to utilize any remedies available to them under the [First Note], the [Second Note], the [First Note deed of trust], and/or Nevada law . . . ." ECF No. 150-10 at 6.

### C. The current dispute and instant motion

The current dispute stems from the fact that GRID did not pay the First Note's remaining balance at the end of 2013 and instead once again modified the notes' maturity date, extending it until December 31, 2017. ECF No. 150 at 3. Believing that any further modification of the notes would require unanimous investor consent,[5] Plaintiffs perceived this modification as invalid and

---

[4] A settlement was not reached with Defendant John Wittrig during the settlement conference. ECF No. 134. However, Plaintiffs and Wittrig also eventually stipulated to a dismissal of claims against him. ECF No. 148.

[5] The court addresses this issue in detail below. In short, Plaintiffs assert that the settlement agreement's integration clause, which in part requires all parties to consent to any modification of

4

thus considered GRID's decision not to pay the balance by December 31, 2013, as a default under the First Note. After the parties failed to informally resolve this dispute, Plaintiffs filed suit in Nevada's Third Judicial District, seeking judicial foreclosure of the GRID property encumbered by the First Note deed of trust.

Plaintiffs assert that, under the settlement agreement, they are entitled to this remedy pursuant to the First Note and its deed of trust. ECF No. 150 at 1. Moreover, they contend that the Third Judicial District is the only proper venue for their claim because Nevada law requires that suits seeking judicial foreclosure must be "tried in the county in which the subject of the action . . . is situated," NRS 13.010(2)(c), which in this case is Lyon County and the corresponding Third Judicial District.[6] *Id.*

During the state-court proceedings, Plaintiffs moved for summary judgment on their foreclosure claim, which the state court denied. ECF No. 150-14. The parties' arguments reflected one of the original points of contention in the suit before this court: whether the two notes merged into a single loan, thus preventing Plaintiffs as the minority interest holders from managing any portion of the loan and consequently foreclosing on the GRID property.[7] *See id.* at 3–4. After conducting a thorough analysis of the agreement's contested provisions, the state court determined that the agreement was ambiguous and susceptible to more than one reasonable interpretation. *Id.* at 4–7. However, the court ultimately declined to interpret the agreement, holding that it lacked jurisdiction due to the agreement's governing-law provision, which selected this federal district as the exclusive venue "for any action arising out of" the agreement. *Id.* at 9–10.

---

the agreement, also requires all parties to consent to any modification of the loan's maturity date, rather than the simple majority required under the 51% rule. *See supra* n.3.

[6] However, Plaintiffs have represented that, if this court finds that they should have filed their judicial-foreclosure action in this federal district, they would remove their case to this court. ECF No. 150 at 8–9 n.4.

[7] After reviewing the state court's decision and the underlying briefing, it is unclear to this court whether Defendants contended that the notes merged based on their own contractual terms or as a result of the settlement agreement. But under either scenario, the current dispute stems from conflicting interpretations of the settlement agreement.

5

In turn, Plaintiffs filed the instant motion before this court, moving the court to essentially vacate its final order dismissing this case pursuant to Federal Rule of Civil Procedure 60(b)(6). Plaintiffs contend that granting this motion will allow the court to enforce this settlement agreement by interpreting its terms, thus allowing them to proceed with the judicial foreclosure before the state court.[8] ECF No. 150 at 4.

## II. Discussion

Plaintiffs ask this court to vacate its order dismissing their claims so that their case can be "re-opened," which Plaintiffs believe will allow the court to "enforce, or otherwise clarify, the terms of the Settlement Agreement." ECF No. 150 at 13. Specifically, Plaintiffs seek clarification of the remedies clause at issue in their motion for summary judgment before the state district court, as well as a determination that Defendants were not entitled to modify the notes' maturity date. *Id.*

Plaintiffs argue that this court retains jurisdiction over disputes over the settlement agreement's terms and that Ninth Circuit precedent allows the court to vacate its prior order under FRCP 60(b)(6) rather than limiting Plaintiffs to suing for breach of contract. ECF No. 150 at 9. However, whether the court has jurisdiction over post-settlement disputes and whether relief is warranted under Rule 60 are two separate issues, both of which the court will address.

### A. Rule 60 relief is not warranted

Under Rule 60(b)(6), a district "court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . any . . . reason that justifies relief." However, such relief is generally warranted only under "extraordinary circumstances." *Keeling v. Sheet Metal Workers Int'l Ass'n, Local Union 162*, 937 F.2d 408, 410 (9th Cir. 1991) (citing *United States v. Sparks*, 685 F.2d 1128, 1129 (9th Cir. 1982)). In *Keeling*, the Ninth Circuit held that "repudiation" or "complete frustration" "of a settlement agreement that terminated litigation

---

[8] Even if this court granted Plaintiffs the relief they seek and agreed with their interpretation, it is unclear whether they could continue the judicial-foreclosure proceedings before the state court; Defendants have moved to dismiss that case, arguing that a foreclosure claim arises out of the settlement agreement, and thus, based on the governing-law provision, the claim may only be brought within this federal district. ECF No. 150 at 8. It does not appear that the state court has ruled on this motion.

6

pending before a court constitutes an extraordinary circumstance . . . ." *Id.* at 410–11. The court ultimately deferred to the district court's conclusion that the defendant's "specific acts" of "bad faith noncompliance" with the settlement agreement caused its complete frustration and thus warranted Rule 60 relief. *Id.* Moreover, the Ninth Circuit has, since *Keeling*, found that mere "disagreements over the proper interpretation of the terms of the settlement agreement" do not constitute complete frustration of the settlement agreement. *Hermetic Order of Golden Dawn, Inc. v. Griffin*, 400 F. App'x 166, 167 (9th Cir. 2010).

Here, Plaintiffs argue that the decision by GRID and Individual Defendants to once again modify the notes' maturity date after the settlement agreement's execution resulted in the agreement's complete frustration. Plaintiffs contend that "[i]t simply cannot be disputed that the parties entered into the Agreement with the explicit understanding that Plaintiffs' entire respective interest in the original $450,000 [First Note] would be fully and finally repaid by December 31, 2013, or else have the right to foreclose under [the First Note] or the [First Note] Deed of Trust." ECF No. 160 at 4 (footnote omitted).

In support of this assertion, Plaintiffs cite to two provisions of the settlement agreement: (1) section 1.7, in which Plaintiffs consented to the 2012 modification that extended the notes' maturity date to 2013, and (2) the agreement's integration clause, which requires that any modification or amendment to the agreement be made "in writing and signed by all of the Parties and Individual Beneficiary Defendants." *Id.* at 4–5 (citing ECF No. 150-10 at 6, 9, 17–22). Plaintiffs therefore appear to be arguing that the settlement agreement incorporated the December 31, 2013 maturity date set by the 2012 modification,[9] and thus, any future modification to the maturity date required consent of all the beneficial-interest holders rather than a simple majority of the interest holders under the 51% rule. *See id.* at 5.

---

[9] As discussed above, Plaintiffs did not originally consent to the 2008, 2010, or 2012 modifications of the notes' maturity date. However, Individual Defendants argued that the two notes merged into a single loan, resulting in Individual Defendants holding the majority of the combined beneficial interest and thus having management control of the loan under the 51% rule. While the settlement agreement does not appear to have settled whether Individual Defendants were the majority interest holders, Plaintiffs did consent to the 2012 modification in the settlement agreement. *See* ECF No. 150-10 at 6.

7

Defendants, however, contest Plaintiffs' interpretation of the settlement agreement. Specifically, GRID argues that, even after the settlement agreement, only a simple majority of the interest holders must consent to a modification of *the notes* rather than the unanimous consent required to amend *the settlement agreement*. ECF No. 156 at 19. GRID contends that the 2012 modification is a completely separate contract from the settlement agreement, the latter of which merely required Plaintiffs to consent to and sign the 2012 modification. *Id.* Thus, GRID asserts that the settlement agreement did not itself set a maturity date and that this term can therefore be modified under the 51% rule.

After reviewing the underlying documents, the court finds that Defendants' interpretation of this specific issue is reasonable. Section 1.7 of the agreement states that Plaintiffs "agree to a modification of the [First Note,] which extends the maturity date and defers interest and penalty payments as more fully described in the Modification Agreement dated June 28, 2012, a copy of which is attached hereto and incorporated herein . . . ." ECF No. 150-10 at 6. While it is possible that the parties intended for this provision to incorporate the December 31, 2013 maturity date into the agreement, there is reason to believe that the clause does not have this effect, as it only discusses Plaintiffs' consent to the modified maturity date. Conversely, the words "incorporated herein" may indeed evince the contrary intent that Plaintiffs' assert.

Ultimately, the court need not decide this question at this stage because section 1.7's ambiguity demonstrates that this post-settlement dispute is a dispute over contract interpretation rather than the "complete frustration" of a settlement agreement that would warrant Rule 60 relief. This point is further bolstered by the fact that, as demonstrated by the state-court order, the settlement agreement did not resolve the parties' dispute over whether the two notes merged into one loan. Accordingly, this court will not vacate its order dismissing this case.

**B.     There is no basis for continued jurisdiction over this dispute**

This conclusion does not end the court's analysis because district courts need not apply Rule 60 in order to enforce a settlement agreement. Rather, a court has "inherent power to enforce a settlement agreement in *a case pending before it.*" *MetroNet Servs. Corp. v. U.S. W. Commc'ns*, 329 F.3d 986, 1014 (9th Cir. 2003), *judgment vacated on other ground, Qwest Corp.*

*v. MetroNet Servs. Corp.*, 540 U.S. 1147 (2004) (emphasis added). However, once a case is dismissed and thus no longer pending, "[e]nforcement of a settlement agreement . . . is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994). In *Kokkonen*, the Supreme Court held that a district court would have jurisdiction after all the parties stipulated to the case's dismissal under FRCP 41(a)(1)(A)(ii) if the parties agreed to the court "embody[ing] the settlement contract in its dismissal order . . . ." *Id.* at 381–82. "If the dismissal order incorporates the settlement terms, the Court reasoned, a violation of those terms would amount to a violation of the court's order. The court would then have ancillary jurisdiction to 'vindicate its authority.'" *O'Connor v. Colvin*, 70 F.3d 530, 532 (9th Cir. 1995) (citing *Kokkonen*, 511 U.S. at 378–80).

Here, Plaintiffs argue that the settlement agreement's governing-law provision grants this court continued jurisdiction over related disputes. ECF No. 150 at 10. This contention is without merit. While the court entered an order granting the stipulated dismissal of all defendants, the court never explicitly embodied the agreement's terms into its orders. *See* ECF Nos. 139, 148; *see also O'Connor*, 70 F.3d at 532 (holding "that an order 'based on' the settlement agreement, without more, does not 'embody the settlement contract,' and is insufficient to create ancillary jurisdiction."). Moreover, Judge Cobb explicitly ruled that he would not retain jurisdiction over disputes over the agreement's terms. Accordingly, this court lacks jurisdiction to enforce or interpret the settlement agreement under the now-dismissed case. And because this court has declined to vacate its order dismissing the case, Plaintiffs must file a new action.

### III. Conclusion

IT IS THEREFORE ORDERED that Plaintiffs' motion for reconsideration to enforce and clarify settlement agreement (ECF No. 150) is **DENIED**.

IT IS SO ORDERED.

DATED this 3rd day of May, 2017.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE